UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALEED MANA MANSOOB,

    Plaintiff,

v.                                      Case No. 09-13191

                                       HON. BERNARD A. FRIEDMAN

LIBERTY MUTUAL d/b/a LIBERTY LIFE

ASSURANCE COMPANY OF BOSTON,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Plaintiff has brought suit against Defendant Liberty Mutual d/b/a Liberty Life Assurance Company of Boston ("Liberty Life" or "Defendant"). He alleges that under the Employee Retirement Income Security Act ("ERISA") he is eligible for disability benefits pursuant to an insurance policy issued by Defendant to Plaintiff's employer, Comcast Corporation ("Comcast"). Plaintiff filed a motion for summary judgment. Defendant filed a cross-motion for summary judgment in response. Pursuant to E.D. Mich. Local Rule 7.1, the Court will decide the motions without oral argument.

### II. Facts

Plaintiff was the beneficiary of a long term disability ("LTD") insurance plan as a benefit throughout his employment with Comcast. A.R. at LL-0001-50. The LTD plan was a group disability income policy sponsored by Comcast and administered by Liberty Life. *Id.* Liberty

Life charged premiums for coverage under the LTD plan, drafted the plan and made all benefit decisions under the plan. *Id.*

On April 9, 2006, Plaintiff was involved in an automobile accident. Following the accident, Plaintiff's treating physician found that he was suffering from post-traumatic stress syndrome.[1] A.R. at LL-0877 to LL-0879, A.R. 0858 to LL-0861. Pursuant to injuries incurred in this accident, he received six months of short term disability ("STD") benefits, the maximum period permitted under Comcast's STD plan. A.R. at LL-0622-23. Subsequently, Plaintiff began receiving long-term disability benefits under the Comcast LTD policy effective October 16, 2006. A.R. at LL-0593-94.

Under the Comcast LTD policy, a person is eligible to receive benefits for a 12-month period as long as his medical condition prevents him from performing the material duties of *his own* occupation. A.R. at LL-0009 (emphasis added). After this 12-month period has elapsed, a person is eligible to continue receiving benefits if his medical condition continues to prevent him from performing the material duties of *any* occupation. *Id.* (emphasis added). "Any Occupation" with respect to Plaintiff's class of employees means "any gainful occupation that [Plaintiff] is or becomes reasonably fitted for by training, education, experience, age, physical and mental capacity." A.R. LL-0007.

The Comcast LTD policy also contains a 24-month maximum period for payment of benefits in cases in which the person's disability is the result of a mental or nervous illness. A.R. at LL-0026. However, these benefits will be extended if the beneficiary is in a hospital or institution of mental illness at the end to this period to cover the term of confinement. *Id.* The

---

[1] Neither party presents direct evidence that post-traumatic stress syndrome is a mental illness as defined by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders but both clearly assume this to be the case and it will be treated as such herein.

coverage period will also be extended to up to 36 months if the covered person is participating in an Extended Treatment Plan. *Id.* An "extended treatment plan" for the purposes of this plan means "continued care that is consistent with the American Psychiatric Association's standard principles of treatment, and is in lieu of confinement in a hospital or institution. A.R. at LL-0010. The term "mental illness" is defined in the policy as "a psychiatric or psychological condition, without demonstrable organic origin, classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders." *Id.*

Under the LTD plan, Plaintiff was required to apply for Social Security benefits when he became eligible for them. LL-0319; Pl.'s Mot. for Remand, Exh. 2, at 3. If he failed to do so his monthly benefit under the plan would be reduced by the amount of social security benefits that the covered person "may be eligible to receive from Social Security". A.R. at LL-0022, LL-0033, LL-0319; Pl.'s Mot. for Remand, Exh. 2, at 3. Plaintiff applied for Social Security benefits. Pl.'s Mot. for Remand, Exh. 1, at 6.

On December 19, 2008, while his application was still pending, Liberty Life sent Plaintiff a letter advising him that his LTD benefits could not be continued beyond January 15, 2009 under the LTD plan based on its determination that he was no longer eligible for benefits. A.R. LL-0118. Liberty Life's stated reason for discontinuing benefits was that Plaintiff was no longer suffering from a verifiable physical condition that would prevent him from performing the duties of any occupation as defined by the plan, and that he had exhausted the 24-month period of benefits for disabilities caused by a mental or nervous condition that were available to him under the policy. A.R. LL-0118 – 0122. This communication also contained language from the plan policy stating that coverage could be continued if Plaintiff were in a hospital or institution for mental illness at the end of the 24-month covered period or if Plaintiff were not confined in a

hospital or institution for mental illness, but was fully participating in an extended treatment plan for the condition that caused the disability. A.R. at LL-0118.

Plaintiff pursued an administrative appeal from this adverse benefit determination, which was denied by Liberty Life's appeals unit on September 12, 2009. A.R. LL-0073 – 0078. At the time that Plaintiff's appeal was denied, his claim before the Social Security Administration ("SSA") seeking social security disability benefits remained pending. A.R. LL-0116. However, on April 30, 2010 the Administrative Law Judge ("ALJ") issued a "Fully Favorable" decision, determining that Plaintiff was disabled from April 2006 to the present. Pl.'s Mot. to Remand, Exh. 1, at 1. Under sections 216(i) and 223(d) of the Social Security Act, disability is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."

Pl.'s Mot. to Remand, Exh. 1, at 5.

Specifically, this decision found that while Plaintiff retains the *physical* residual functional capacity for a limited range of light work, his mental impairments have caused "a substantial loss of the abilities to perform the basic demands of competitive, remunerative, unskilled work." Pl.'s Mot. to Remand, Exh. 1, at 8 (emphasis in original). The ALJ in part based its determination that Plaintiff could perform a limited range of light work on the opinion of Dr. H.J. Kim, the independent medical examiner employed by Liberty Life. *Id.*

### III. Analysis

#### A. Standard of Review

The Sixth Circuit has determined that the concept of summary judgment is "inapposite to the adjudication of an ERISA action." *Wilkens v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Therefore the summary judgment standard of review does not apply to

ERISA claims. *Id.* Rather, the court in *Wilkens* suggested some guidelines for district courts in adjudicating an ERISA action:

> 1. As to the merit of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
>
> . . .
>
> 3. For the reasons set forth above, the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their dispositions.

*Id.*

The standard of review is lowered to a determination of whether the denial of benefits was "arbitrary and capricious" when the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Fire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Miller v. Metropolitan Life Ins. Co*, 925 F.2d 979, 983 (6th Cir. 1991). This standard is the "least demanding form of judicial review." *Admin. Comm. of the Sea Ray Emp.'s Stock Ownership and Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999). Although such review is deferential, it is not inconsequential. *McDonald*, 347 F.3d at 172. It requires "review of the quality and quantity of medical evidence and opinions on both sides of the issues." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). The plan administrator's decision should be upheld if it is the "result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). Substantial evidence means "much more than a mere scintilla." It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McDonald*, 347

F.3d at 171. If the administrative record does not show that the administrator offered a "reasoned explanation" based on substantial evidence, the decision is arbitrary or capricious. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

The Sixth Circuit has also made clear that courts are to consider several factors in reviewing a plan administrator's decision, including the existence of a conflict of interest, and the plan administrator's consideration of the Social Security Administration's determination that the beneficiary of the plan was fully disabled. *Glenn*, 461 F.3d at 666. Another factor for consideration is whether the plan administrator based its decision to deny benefits on a file review as opposed to conducting a physical examination of the applicant. *Bennett v. Kempler Nat'l Serv.'s, Inc.*, 514 F.3d 547, 553 (6th Cir. 2008) (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005)).

### B.      Conflict of Interest

The Supreme Court has held that a conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefit claims, even where the administrator is an insurance company and not the beneficiary's employer. *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348-50 (2008). This conflict of interest is accorded additional weight in the determination of whether a plan administrator's decision was arbitrary and capricious when the experts upon whose judgment the determination is based are hired and paid by the insurance company. *Calvert*, 409 F.3d at 292. Additionally, the potential financial incentive an insurance company has to deny claims weighs further toward a finding that a plan administrator's decision was arbitrary and capricious. *Id.*

Here, a clear conflict of interest exists, as Liberty Life's plan administrator holds the dual role of decision maker and payer of benefits. The General Provisions of the plan state: "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and determine the

benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." A.R. at LL-0044. This is also conceded by the Defendant. Def.'s Mot. for Summary J., at 2.

The physicians who rendered opinions with regard to Plaintiff's condition and upon which Liberty Life relied in deciding to discontinue benefits appear, from the administrative record available, to have been hired by both Plaintiff and Liberty Life, although billing and payment information are not included in this record. For example, Dr. Al-Najjar, Dr. Mussad, Dr. Travis, Ms. Olga Julicher, and Dr. Riabova appear to have been at least directly solicited by Plaintiff. A.R. at LL-0472-74, LL-0481-85, LL-0493, LL-0519-0528. Liberty Life seems to rely primarily on the Independent Medical Examinations performed by Dr. Kim and Dr. Wagner at its request. A.R. at LL-0075-76. However, the findings of these physicians are also corroborated by the medical records submitted by Dr. Riabova and Dr. Travis. A.R. at LL-0075.

Finally, it is clear that Liberty Life has the financial incentive deny claims. During his period of disability, Liberty Life paid Plaintiff significant amounts based on the terms of the LTD plan and would have an interest in discontinuing such payments.

Taken together, these conflict of interest factors seem to weigh in favor of a finding that the plan administrator's decision was arbitrary and capricious.

### C.    Consideration of the SSA's Disability Determination

"'A determination that a person meets the Social Security Administration's uniform standards for disability benefits does not make him automatically entitled to benefits under an ERISA plan, since the plan's disability criteria may differ from the Social Security Administration's." *Delisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 445-46 (6th Cir. 2009) (citing *Whittaker v. Hartford*, 404 F.3d 947, 949 (6th Cir. 2005)). However, the SSA

determination, "while not binding, is far from meaningless." *Calvert*, 409 F.3d at 294. If the plan administrator

> (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious.

*Bennett*, 514 F.3d at 554 (citing *Glenn*, 461 F.3d at 669).

Therefore, a plan administrator's silence as to the finding of total disability by the SSA's ALJ weighs in favor of finding that the decision reached by the plan administrator was arbitrary and capricious. *Id*. at 554. However, the plan administrator is not required to discuss the SSA's disability determination in its decision. *Id.*

Plaintiff claims that the finding of the Social Security Administration's ALJ must be considered in Liberty Life's determination that Plaintiff was no longer disabled. Pl.'s Mot. to Remand, at 4-5. However, as noted above, that the plan administrator's consideration of the SSA's determination in arriving at his or her conclusion is not technically a requirement, but is a factor that weighs strongly in favor of a finding that the plan administrator's decision was arbitrary and capricious.

As stated above, the SSA found that Plaintiff was totally disabled beginning on April 6, 2006. Pl.'s Mot. to Remand, Exh. 1, at 5. Liberty Life required that Plaintiff apply for this determination from the SSA, stating that if he did not do so his monthly benefits would be reduced by the amount that could have been offset by the receipt of disability benefits from the SSA. *Id.*, Exh. 2, at 3-4, A.R. at LL-0319-20. Additionally, Liberty Life benefitted financially from this finding, even though it was made after their determination to discontinue benefits. A.R. at LL-0319. They would receive a portion of the benefits paid retroactively to Plaintiff by the SSA upon a

positive determination because the retroactive benefits would have been considered due to Plaintiff during the time when the full portion of his LTD benefits were paid by Liberty Life under the plan. *Id.* Finally, Liberty Life fails to explain why it is taking a position different than the SSA's ALJ in its decision to discontinue benefits. Indeed, the determination of the SSA was not even mentioned in the plan administrator's decision because the SSA determination, dated April 30, 2010, had not been made at the time that Liberty Life rendered its final decision on Plaintiff's appeal of the discontinuation of LTD benefits, issued on December 19, 2008. A.R. at 0018. This indicates that the lack of consideration of the SSA's decision should weigh in favor of a finding that the plan administrator's decision was arbitrary and capricious.

        D.      **Effect of the Social Security Administration's Favorable Decision**

Plaintiff points out that the SSA has a higher standard than Liberty Life in determining disability, stating that this strongly demonstrates the arbitrary and capricious nature of the administrator's determination. However, this is not the relevant inquiry in evaluating the plan administrator's decision. The relevant inquiry is whether the decision of the plan administrator was arbitrary and capricious, given the factors set forth above and the terms of the LTD plan. As discussed above, the conflict of interest factors and the lack of consideration of the SSA's fully favorable disability determination, standing alone, weigh in favor of a finding that the plan administrator's decision was arbitrary and capricious.

However, as Liberty Life states, and Plaintiff does not dispute, the basis for Liberty Life's discontinuation of Plaintiff's LTD benefits was a finding that he was no longer so disabled that he could not perform "any occupation" under the terms of the plan. Liberty Life's decision, based on the medical records submitted by Plaintiff's physicians and by the physicians employed by Liberty Life to assess Plaintiff's condition, stated that Plaintiff no longer had any physical disability

sufficient to keep him from performing "any occupation." The decision stated that, based on his physical limitations, his education and his experience Plaintiff could perform jobs within the "sedentary to light physical demand" category, including Sales Representative (Outside), Sales Representative (Inside), Sales Records Clerk, and Customer Services Representative (Telephonic). A.R. at LL-121. This is consistent with the finding of the SSA's ALJ, which determined that Plaintiff had the *physical* functional capacity to do light work. Pl.'s Mot. to Remand, Exh. 1, at 5 (emphasis in original).

The difference between the two determinations is that while the SSA's determination of disability takes Plaintiff's mental disability into account in determining the total disability, Liberty Life's plan does not, after a pre-set period of 24 months. A.R. at LL-0118. As stated above, Liberty Life only provides benefits for 24 months to a beneficiary whose disability is based on a mental or nervous condition. Liberty Life had been paying benefits to Plaintiff based on his post-traumatic stress disorder during the 24 month period and had advised him that his benefits would cease after January 15, 2009 because he was no longer physically disabled, according to the medical records, the examination performed by Dr. Kim, and the independent medical records review performed by Dr. Wagner, and because the maximum benefits due under the plan for disability based on a mental illness would be reached as of that date. Plaintiff admits in his Motion for Summary Judgment that he had been receiving LTD benefits pursuant to his post-traumatic stress disorder and that the 24-month payable period under the plan has elapsed. A.R. LL-0118; Pl.'s Mot. for Summary J., at 2.

Despite this difference between the SSA's standard for determination of disability and that under Liberty Life's plan, Plaintiff states two reasons why he should still continue to receive benefits. First, he claims that the post-traumatic stress disorder has an organic origin, which would make it physical in nature and thus qualified for continued LTD benefits under the plan. There is

no factual record to support this. Plaintiff had the opportunity to submit medical evidence that the cause of the post-traumatic stress disorder was a physical ailment or disability and did not do so. In making its final determination, Liberty Life requested updated medical records from Plaintiff's treating physicians, as well requesting a medical examination by Dr. Kim, and an independent review of Plaintiff's medical records by Dr. Wagner. A.R. at LL-0119-20. According to Liberty Life there was no indication in these records that Plaintiff's mental illness had an organic origin, and Plaintiff does not dispute this. In the absence of any evidence in the administrative record that the disability suffered by Plaintiff was organic in origin, it seems clear that the plan administrator's decision was "the result of a deliberate, principled reasoning process" supported by substantial evidence. *Glenn*, 461 F.3d at 666.

Second, Plaintiff argues that even if Plaintiff's disability was based solely on a mental illnesss as defined under the plan and that the 24-month cap on LTD benefits under the plan had indeed been reached, the benefits should be continued because Plaintiff would have qualified for the exception for continued benefits past the 24-month period based on participating in an Extended Treatment Plan for the condition that caused the disability and was not notified of this in writing. This argument is also without merit. The provisions of the LTD benefits plan were clearly stated. A.R. at LL-0026. Additionally, Plaintiff was notified of this restriction on three separate occasions in writing by Liberty Life. First, the 24-month cap was discussed and explained in a letter to Plaintiff dated November 27, 2006. A.R. at LL-0593. Second, the restriction language from the LTD plan was contained on the first page of a letter sent to Plaintiff on April 7, 2007 informing him that he was currently receiving benefits for post-traumatic stress disorder. A.R. at LL-0517. Finally, the restriction was reiterated in the letter from Liberty Life, dated December 19, 2008, notifying him that his LTD benefits would be discontinued as of January 15, 2009. A.R. at LL-0118.

If, as Plaintiff claims, he could have participated in a qualifying Extended Treatment Plan in order to extend his LTD benefits for an additional 12 months, he had more than sufficient notice upon which to seek out and enroll in such a program and chose not to do so.

V.      Order

Accordingly,

IT IS ORDERED that Defendant Liberty Life's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment is DENIED.


Date:  November 23, 2010                    S/Bernard A. Friedman_____
                                            HON. BERNARD A. FRIEDMAN
                                            UNITED STATES DISTRICT JUDGE